**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **12-02002-jw**

## ORDER

The relief set forth on the following pages, for a total of 10 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**02/09/2017**



Jhn E Waites
US Bankruptcy Judge
District of South Carolina

Entered: 02/09/2017

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 12-02002-JW |
| | Chapter 13 |
| Gregory Dee Dowey and Sandra Karen Dowey, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court upon the filing of a Certification of Plan Completion and Request for Discharge ("Request for Discharge") filed by Gregory Dee Dowey and Sandra Karen Dowey ("Debtors"). At the time of the filing of the Request for Discharge, Debtors were not current on their ongoing post-petition payments to be paid directly to their mortgage creditor U.S. Bank National Association ("Mortgage Creditor") as required by their confirmed plan. A hearing was held on the Request for Discharge, attended by Debtors, Debtors' counsel, and the Chapter 13 Trustee. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core matter pursuant to 28 U.S.C. § 157. Based upon the record of this case and applicable law, the Court makes the following findings of fact and conclusions of law.[1]

**FINDINGS OF FACT**

1.      Debtors filed a petition for relief under chapter 13 of the Bankruptcy Code on March 29, 2012.

2.      On April 3, 2012 Debtors filed their chapter 13 plan of reorganization, which was subsequently amended on June 4, 2012 ("Chapter 13 Plan"). Debtors proposed to treat US Bank Home Mortgage, the previous holder of the mortgage debt secured by Debtors' principal residence

---

[1]      To the extent the following findings of fact are conclusions of law, they are adopted as such, and vice versa.

("Mortgage Debt"), pursuant to 11 U.S.C. § 1322(b)(5).[2] Specifically, under the section entitled

"Long term or mortgage debt. Curing default: 11 U.S.C. 1322(b)(3) and/or (5)", the Chapter 13

Plan provides the following:

> Arrearage payments: The trustee shall pay the arrearage as stated in the creditors allowed claim or as otherwise ordered by the Court to US Bank Home Mortgage at the rate of $474.00 or more per month, for 6 Gidding Court, Irmo, SC 29063, along with 0% interest. The creditor shall apply trustee payments solely to those designated arrearages, i.e. those arrearages accruing before the month specified . . . below. For so long as the debtor complies with this plan, a creditor may not declare a default based on any payment delinquency to be cured by this paragraph and the creditor shall not impose any post-petition fee on account of any arrearage paid by the trustee.

> Maintenance of regular non-arrearage payments: Beginning May 2012, the Debtor shall pay directly to the creditor non-arrearage payments arising under the agreement with the secured creditor. The creditor shall apply each payment under this paragraph solely to the post-petition obligation that accrue during or after the month specified herein.

3.      On June 20, 2012, the Court entered an Order confirming the Chapter 13 Plan.

4.      On May 6, 2016, the Chapter 13 Trustee filed a Report of Trustee of Completion

of Plan Payments by Debtor, in which the Trustee indicated that he has received all payments that

were to be made to him from Debtors according to the Chapter 13 Plan.

5.      The Chapter 13 Trustee then filed a Notice of Final Cure Payment pursuant to Fed.

R. Bankr. P. 3002.1(f), indicating that the amount required to cure the pre-petition default on the

Mortgage Debt has been paid in full, and alerting Mortgage Creditor to file a response under Fed.

R. Bankr. P. 3002.1(g).

6.      On May 16, 2016, Debtors filed the Request for Discharge, certifying under penalty

of perjury that "[a]ll plan payments have been completed and the debtors are entitled to a

discharge."

---

[2]      Further reference to the Bankruptcy Code (11 U.S.C. § 101, *et seq.*) shall be by section number only.

7.      Mortgage Creditor filed its response to notice of final cure on May 25, 2016, indicating that it agrees that the pre-petition arrears have been cured through the payments to the Chapter 13 Trustee, but that Debtors were not current on the post-petition maintenance payments as $4,988.20 remained due.

8.      On June 17, 2016, Debtors filed a Motion to Determine Final Cure and Mortgage Payment pursuant to Fed. R. Bankr. P. 3002.1(h).

9.      On July 1, 2016, Mortgage Creditor filed a response to the Motion to Determine Final Cure and Mortgage Payment, indicating its belief that the Response to Notice of Final Cure was accurate.

10.     Debtors filed a withdrawal of the Motion to Determine Final Cure and Mortgage Payment, stating that it was done "Upon Debtor's Request." Debtors do not dispute that they are not current on their post-petition payments to Mortgage Creditor.

11.     A hearing was scheduled on the Request for Discharge, which was continued to allow Debtors to submit a memorandum.

12.     Debtors then filed a Motion for Hardship Discharge pursuant to § 1328(b) on September 13, 2016.

13.     On September 30, 2016, Debtors filed a memorandum in support of the Request for Discharge under § 1328(a), which was subsequently amended.

14.     Thereafter, the Court held hearings on Debtors' Motion for Hardship Discharge and Debtors' Request for Discharge. After receiving unchallenged testimony from Sandra Karen Dowey and with the consent of the Chapter 13 Trustee, the Court granted Debtors' Motion for Hardship Discharge under § 1328(b) as reflected in the Court's order filed on October 21, 2016.

At the request of Debtors, the Court also heard and now considers Debtors' arguments regarding

the Request for Discharge pursuant to § 1328(a).

### **CONCLUSIONS OF LAW**

The central issue of this matter is whether Debtors are entitled to a discharge under

§ 1328(a) when Debtors have failed to make all of the maintenance payments required under

§ 1322(b)(5), which were to be paid directly to Mortgage Creditor under the terms of Debtors'

confirmed Chapter 13 Plan.[3] Section 1328(a) states in pertinent part:

> [A]s soon as practicable after completion by the debtor of all payments under the
> plan, and in the case of a debtor who is required by a judicial or administrative
> order, or by statute, to pay a domestic support obligation, after such debtor certifies
> that all amounts payable under such order or such statute that are due on or before
> the date of the certification (including amounts due before the petition was filed,
> but only to the extent provided for by the plan) have been paid, . . . the court shall
> grant the debtor a discharge of all debts provided for by the plan or disallowed
> under section 502 of [the Bankruptcy Code], except any debt—
>
> (1) provided for under section 1322(b)(5);
> (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C),
> (2), (3), (4), (5), (8), or (9) of section 523(a);
> (3) for restitution, or a criminal fine, included in a sentence on the debtor's
> conviction of a crime; or
> (4) for restitution, or damages, awarded in a civil action against the debtor as a
> result of willful or malicious injury by the debtor that caused personal injury to
> an individual or the death of an individual.

As an initial matter, the Court notes that due to Debtors' hardship discharge under

§ 1328(b), their request for a discharge under § 1328(a) is now moot. Section 1328(b) allows the

Court to "grant a discharge to a debtor that has not completed payments under the plan." Therefore,

sections 1328(a) and 1328 (b) are mutually exclusive—a debtor either completes or does not

complete the "payments under the plan." By receiving a hardship discharge under § 1328(b),

---

[3]       Section 1322(b)(5) provides that if the last payment of a claim is due after the final plan payment, a chapter
13 plan may treat the claim by curing a pre-petition default and by maintaining ongoing payments while the case is
pending.

Debtors are bound to the position that they did not make all of the payments under the plan; and

therefore, they would not qualify to receive a discharge under § 1328(a). Nevertheless, because

this matter is of importance to the Bar and because of the significant memoranda and arguments

presented in this matter, the Court will consider Debtors' arguments regarding § 1328(a), including

whether § 1322(b)(5) maintenance payments are "payments under the plan" for purposes of

§ 1328.

Debtors argue that they are entitled to a discharge under § 1328(a) based on the language

of the statute, alleging that it is ambiguous.[4] Specifically, § 1328(a) includes two different

phrases— "debts *provided for by* the plan" and "payments *under* the plan." Debtors assert that

"provided for by the plan" has a broader scope than "under the plan," and that due to its limited

scope, "payments under the plan" refers only to the payments made by a debtor directly to the

chapter 13 trustee. In support of this position, Debtors call the Court's attention to the use of

"payment under the plan" in Fed. R. Bankr. P. 3002.1(g), § 727(a)(9), and § 1329(a)(4); the five-

year limitation of payments for a plan under § 1322(d); the fact that § 1322(b)(5) maintenance

payments are typically governed by the terms of the debtor's original agreement with the secured

creditor, the discharge exception for debts treated under § 1322(b)(5); and the Court's prior

practices before the enactment of Fed. R. Bankr. P. 3002.1.[5]

---

[4]    Debtors support this central thesis by asserting a variety of arguments. These arguments were addressed by
the other authority cited in this Order. The Court has fully considered them herein.

[5]    Debtors have also asserted an argument not previously addressed by the opinions cited herein. Specifically,
Debtors call attention to the 2005 amendment of § 1328(a). In addition to completing all payments under the plan, in
order to receive a discharge, the amendment added a requirement that a debtor also certify that all post-petition
amounts payable on domestic support obligations ("DSOs") are paid at the time of the certification. Debtors allege
that this amendment demonstrates that Congress does not intend for DSOs to be considered "payments under the plan"
because if all DSOs were "payments under the plan," the additional certification of payment would not be necessary.

In furtherance of their argument, Debtors analogize DSOs to claims treated under § 1322(b)(5). In both
instances, the debtor generally pays the post-petition payments directly to the creditor, while pre-petition amounts are
cured through a debtor's payments to the trustee. Therefore, Debtors suggest that inasmuch as DSO payments are not
"under the plan," § 1322(b)(5) maintenance payments are also not "under the plan."

Nearly identical arguments were recently made on an appeal to the District Court for the

Eastern District of Virginia in <u>Evans v. Stackhouse</u>, 2017 WL 150247 (E.D. Va. Jan. 13, 2017).[6]

In a lengthy and thorough opinion, Judge Doumar found that § 1322(b)(5) maintenance payments

are payments under the plan for purposes of § 1328(a).  <u>Evans v. Stackhouse</u> appears to follow the

vast majority of courts that hold that maintenance payments made directly to the creditor are

"payments under the plan."[7] <u>See</u> <u>Foster v. Heitkamp (In re Foster)</u>, 670 F.2d 478 (5th Cir. 1982)

(holding that maintenance payments made directly to the creditor are "payments under the plan");

<u>In re Kessler</u>, 2015 WL 4726794 (Bankr. N.D. Tex. June 9, 2015) aff'd 655 F. App'x 242 (5th Cir.

---

While similar, payments under § 1322(b)(5) are not completely parallel to DSO payments because the Bankruptcy Code treats them differently. When a debtor elects to treat a claim under § 1322(b)(5), the Code requires the plan to include both the debtors' cure payments and the maintenance payments. Conversely, while the Code requires under §§ 507(a)(1) and 1322(a)(2) that debtors cure any claims filed for DSO payments that were due pre-petition through payments in their chapter 13 plan, there is no corresponding requirement under the Code that the plan must control the payment of DSOs that becomes due post-petition. <u>See</u> Keith M. Lundin & William H. Brown, <u>Chapter 13 Bankruptcy 4th Edition</u>, § 545.1, at ¶ 10, Sec. Rev. Mar. 29, 2006, www.Ch13online.com (noting that "[t]here is no provision of the Bankruptcy Code or Rules that signals that the debtor owes a DSO" and questioning "[h]ow would a party in interest know that a DSO certificate is required for § 1328(a) purposes when the claim arises after the petition"). The Code merely requires a certification that these post-petition amounts were paid. Therefore, the Court is not convinced by Debtors' argument that the 2005 amendment to § 1328(a) requiring certification of payment of all DSOs demonstrates that § 1322(b)(5) maintenance payments are not "payments under the plan."

[6]      Debtors assert that the underlying opinion that is the basis of the appeal in <u>Evans v. Stackhouse</u>, <u>In re Evans</u>, 543 B.R. 213 (Bankr. E.D. Va. 2016), is flawed because the opinion describes the debtor's abilities to address mortgage debt in a chapter 13 plan as "flexible." Debtors argue that because of the anti-modification provision of § 1322(b)(2), there is less flexibility to address mortgage debts than other secured debts. The court in <u>Evans</u> used the term "flexible" to describe a debtor's ability to propose to pay ongoing post-petition payments on a mortgage debt either to the chapter 13 trustee or directly to a mortgage creditor. <u>See</u> <u>Evans</u>, 543 B.R. at 221. The Court is not convinced that the reasoning of <u>Evans</u> is flawed due to that court's use of "flexible."

Further, Debtors assert that the holding in <u>Evans</u> would require that the any mention of a debt in a plan would result in that debt's payments becoming "payments under the plan."  Debtors argue that because this District's local form plan requires debtors to address most types of debts, this type of holding would discourage the use of the local form plan and the filing of chapter 13 cases as it is likely that most debtors will fail to make payments promised in the chapter 13 plan and not receive a discharge. While the Court is not convinced by Debtors' broad interpretation of <u>Evans</u> and is troubled by Debtors' assessment that debtors are expected to not complete the payments promised in their chapter 13 plans, the Court notes that the present matter is limited to whether § 1322(b)(5) maintenance payments are payments under the plan. A determination of whether other payments included in a chapter 13 plan constitute a "payment under the plan" would depend on the language of the particular plan and the type of debt being paid. Therefore, the Court is not inclined to consider whether additional types of debts included in a plan are "payments under the plan" at this time.

[7]      Debtors did not provide, nor could the Court find any case law holding that "payments under the plan" as used in § 1328(a) is comprised of only those payments made by a debtor directly to the chapter 13 trustee.

6

2016) (denying a discharge under § 1328(a) after holding that "payments under the plan" includes

maintenance payments made directly to the creditor under § 1322(b)(5)); In re Hoyt-Kieckhaben,

546 B.R. 868 (Bankr. D. Colo. 2016) (same); In re Heinzle, 511 B.R. 69 (Bankr. W.D. Tex. 2014)

(same); In re Ramos, 540 B.R. 580 (Bankr. N.D. Tex. 2015) (finding that debtors did not complete

their "payments under the plan" under § 1328(a) when debtors failed to maintain direct post-

petition payments to their mortgage lender); In re Gonzales, 532 B.R. 828 (Bankr. Colo. 2015)

(same); In re Perez, 339 B.R. 385, 390 n. 4 (Bankr. S.D. Tex. 2006) aff'd sub nom. 373 B.R. 468

(S.D. Tex. 2007) ("Every Chapter 13 plan which this Court has reviewed reflects which claims

will be paid through the trustee and which claims will be paid directly by the debtor; therefore,

when the plan is confirmed, all payments that are referenced in the plan, regardless of whether

they are made by the trustee or directly by the debtor, are payments made 'under the plan.'"); In

re Hankins, 62 B.R. 831, 835 (Bankr. W.D. Va. 1986) ("We conclude that even though the Debtors

propose to make disbursements directly to the secured creditors, such payments are nonetheless

payments "under the Plan" in the sense that they are dealt with by the Plan . . . .").

   After careful consideration, the Court agrees with the reasoning of these cases that

§ 1322(b)(5) maintenance payments are "payments under the plan" for the purposes of discharge.

In particular, the Court is convinced with the reasoning of the Fifth Circuit in Foster, which was

recently summarized by that court in Kessler:

> In Foster, we considered a bankruptcy court's refusal to confirm a Chapter 13 plan
> that provided for current payments on the debtor's mortgage to be made "outside
> the plan," i.e. directly to the creditors. We concluded that the bankruptcy code
> allows for such direct payments, and explained that post-petition mortgage
> payments, whether paid directly or through a trustee, are paid "under the plan"
> when the plan also provides for the curing of pre-petition arrears on the debt. Thus
> a Chapter 13 plan does not need to provide for curing default on § 1322(b)(5) debts,
> but if it does, then it must also provide for maintenance of the post-petition
> payments. Both the payments toward the curing pre-petition mortgage arrears and

7

the post-petition maintenance payments fall under a Chapter 13 plan because both
payments concern the same claim.

Kessler, 655 F. App'x at 244 (citing Foster, 670 F.2d at 482, 486, 488–89, 493).

In addition, in support of the argument that maintenance payments under the plan are
"payments under the plan," the Court notes that the failure to make § 1322(b)(5) maintenance
payments can serve as grounds for dismissal under § 1307. Section 1307 provides that "on request
of a party of interest or the United States trustee and after notice and a hearing, the court . . . may
dismiss a case under [chapter 13] . . . for cause, including . . . material default by the debtor with
respect to a term of a confirmed plan . . . ." The promise to maintain post-petition payments to a
mortgage creditor is a mandatory element of the treatment of claims addressed by § 1322(b)(5),
and it is not severable.  A failure to perform this promise is a material default of the plan. See In
re Formaneck, 534 B.R. 29 (Bankr. D. Colo. 2015) ("The Debtors' failure to make any direct
payments to Wells Fargo establishes a material default under § 1307(c)(6), and the Court concludes
dismissal . . . is in the best interest of creditors and the estate."). The Court cannot reconcile that a
debtor would be able to receive a discharge after failing to make the maintenance payments under
§ 1322(b)(5) when that same failure is grounds for dismissal of the debtor's entire case.

Further, the computation of disposable income to pay unsecured creditors under § 1325(b)
takes into account the promised direct payments for housing, including Debtors' § 1322(b)(5)
maintenance payments. Failure to pay these housing payments may be a grounds to require a higher
dividend to unsecured creditors.

For these reasons, the Court concludes that "payments under the plan" as stated in § 1328(a)
include the ongoing maintenance payments under § 1322(b)(5) that the debtor makes directly to

8

the creditor.[8] As Debtors have not paid all of their ongoing mortgage payments to Mortgage

Creditor, they have not made all their payments under the plan and are not entitled to a discharge

under § 1328(a).[9]

## CONCLUSION

For the foregoing reasons, Debtors' request for a discharge under § 1328(a) is denied as

Debtors have failed to make all of their payments under their confirmed chapter 13 plan. As

Debtors have received a hardship discharged under § 1328(b) and it appears that all remaining

matters in this case are completed, the Court hereby directs that the Clerk of Court close Debtors'

case.

**AND IT IS SO ORDERED.**

---

[8]      Recently, the undersigned has implemented a conduit mortgage payment procedure, which requires debtors in certain circumstances to make § 1322(b)(5) maintenance payments to the chapter 13 trustee.

[9]      For debtors that have failed to a make § 1322(b)(5) post-petition maintenance payments, the Court has previously recognized the following relief: (1) closing the case without a discharge; (2) seeking a hardship discharge if the debtor can satisfied the burden of proof required; (3) proposing a cure of the missed payments over a reasonable period of time during the remaining term of the chapter 13 case, see In re Diggins, 561 B.R. 782 (Bankr. Colo. 2016); (4) amending the chapter 13 plan to surrender the collateral if § 1329(c) permits, see In re Dennett, 548 B.R. 733 (Bankr. N.D. Tex. 2016); (5) amending the chapter 13 plan to pursue Loss Mitigation/Mortgage Modification if the LM/MM relief results in the cure or waiver of the subject post-petition arrearage; (6) presenting evidence of the mortgage creditor's written agreement to waive or forbear the payment of the subject post-petition arrearage; (7) converting the case to chapter 7 under § 1307(a); and (8) dismissing of the case under § 1307.